**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

IN RE:    ETHICON, INC.,
          PELVIC REPAIR SYSTEM
          PRODUCTS LIABILITY LITIGATION          MDL No. 2327

THIS DOCUMENT RELATES TO:

*Atemnkeng, et al. v. Ethicon, Inc., et al.*          Civil Action No. 2:12-cv-00923

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Ethicon, Inc. and Johnson & Johnson's (collectively "Ethicon") Motion to Dismiss with prejudice [ECF No. 24]. The plaintiffs have not responded, and the deadline for responding has expired. Thus, this matter is ripe for my review. For the reasons stated below, Ethicon's Motion to Dismiss with prejudice [ECF No. 24] is **GRANTED**.

**I.     Background**

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse and stress urinary incontinence. In the seven MDLs, there are over 70,000 cases currently pending, approximately 29,000 of which are in the Ethicon, Inc. MDL, MDL 2327. Managing multidistrict litigation requires the court to streamline certain litigation procedures in order to improve efficiency for the parties and the court. Some of these management techniques simplify the parties' discovery responsibilities.

In an effort to efficiently and effectively manage this massive MDL, I decided to conduct pretrial discovery and motions practice on an individualized basis so that once a case is trial-ready, it can then be promptly transferred or remanded to the appropriate district for trial. *See* PTO # 17

[ECF No. 281], No. 2:12-md-2327 (S.D. W. Va. Oct. 4, 2012). Pretrial Order ("PTO") # 17 provides that each plaintiff in this MDL must submit a Plaintiff Profile Form ("PPF") to act as interrogatory answers under Federal Rule of Civil Procedure 33 and responses to requests for production under Federal Rule of Civil Procedure 34. *See* PTO # 17 [ECF No. 281], No. 2:12-md-2327 (S.D. W. Va. Oct. 4, 2012). The parties jointly drafted the requirements for PTO # 17, and I entered it as applicable to every one of the thousands of cases in this MDL. The instant plaintiffs, however, failed to fully comply with PTO # 17 in that the PPF they submitted to the defendants on December 13, 2012 was materially deficient. *See* Ex. A 2-5 [ECF No. 24-1].  For example, several pages are left blank and neither plaintiff signed the PPF. *Id*. The defendants sent a deficiency letter to the plaintiffs on December 28, 2012, but the plaintiffs have not sent any supplemental responses to the defendants. Ex. B [ECF No. 24-2].

Additionally, pursuant to my management of the MDL, I ordered the plaintiffs and defendant to select 200 of the oldest cases in the Ethicon MDL that name only Ethicon, Inc., Ethicon, LLC, and/or Johnson & Johnson or allege claims against only the Ethicon defendants' products. Those cases became part of a "wave" of cases to be prepared for trial and, if necessary, remanded. The instant case was selected as an Ethicon Wave 1 case that is governed by discovery deadlines set forth in PTO # 195.  Pursuant to PTO # 195, the plaintiffs were to complete and serve a Plaintiff Fact Sheet ("PFS") to the defendants by October 19, 2015. PTO # 195 [ECF No. 22]. The plaintiffs, however, have not served a PFS to the defendants as of the date of this Order. Despite repeated correspondence from the defendants to try to address this issue, the plaintiffs have not responded in any form to address this issue.  Mot. to Dismiss 3 [ECF No. 24]; Ex. C [ECF No. 24].

I am cognizant of the defendants' belief that plaintiff Natasha Atemnkeng died on or about February 25, 2013. Mot. to Dismiss n. 1 [ECF No. 24]. I further recognize that this might have caused a great deal of delay and confusion in responding to discovery requests.  However, the plaintiffs have not made any kind of filing in this case since December 12, 2012, when they filed the amended short form complaint.  Am. Compl. [ECF No. 15]. The plaintiffs did not respond to the defendants "Suggestion of Death upon the Record," [ECF No. 21], nor did they respond to the instant motion to dismiss.  There is, in fact, no indication that the plaintiffs have actually *done* anything with this litigation since submitting a materially deficient PPF to the defendants on December 13, 2012.

## II.    Legal Standard

Federal Rule of Civil Procedure 37(b)(2) allows a court to sanction a party for failing to comply with discovery orders. *See* Fed. R. Civ. P. 37(b)(2) (stating that a court "may issue further just orders" when a party "fails to obey an order to provide or permit discovery"). Before levying a harsh sanction under Rule 37, such as dismissal or default, a court must first consider the following four factors identified by the Fourth Circuit Court of Appeals:

> (1) Whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions.

*Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989) (citing *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503–06 (4th Cir. 1977)).

In applying these factors to the case at bar, I must be particularly cognizant of the realities of multidistrict litigation and the unique problems an MDL judge faces. Specifically, when handling seven MDLs, each containing thousands of individual cases, case management becomes

of utmost importance. *See In re Phenylpropanolamine Prods. Liab. Litig.*, 460 F.3d 1217, 1231 (9th Cir. 2006) (emphasizing the "enormous" task of an MDL court in "figur[ing] out a way to move thousands of cases toward resolution on the merits while at the same time respecting their individuality"). I must define rules for discovery and then strictly adhere to those rules, with the purpose of ensuring that pretrial litigation flows as smoothly and efficiently as possible. *See id.* at 1232 ("[T]he district judge must establish schedules with firm cutoff dates if the coordinated cases are to move in a diligent fashion toward resolution by motion, settlement, or trial."); *see also* Fed. R. Civ. P. 1 (stating that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."). In turn, counsel must collaborate with the court "in fashioning workable programmatic procedures" and cooperate with these procedures thereafter. *In re Phenylpropanolamine*, 460 F.3d at 1231–32. Pretrial orders—and the parties' compliance with those orders and the deadlines set forth therein—"are the engine that drives disposition on the merits." *Id.* at 1232. And a "willingness to resort to sanctions" in the event of noncompliance can ensure that the engine remains in tune, resulting in better administration of the vehicle of multidistrict litigation. *Id.*; *see also Freeman v. Wyeth*, 764 F.3d 806, 810 (8th Cir. 2014) ("The MDL judge must be given 'greater discretion' to create and enforce deadlines in order to administrate the litigation effectively. This necessarily includes the power to dismiss cases where litigants do not follow the court's orders.").

## III.   Discussion

Pursuant to PTO # 17, each plaintiff is required to submit a completed PPF within 60 days of filing a Short Form Complaint. PTO # 17 ¶ 1b [ECF No. 281], No. 2:12-md-2327 (S.D. W. Va. Oct. 4, 2012). PTO # 17 provided that "[a]ny plaintiff who fails to comply with the PPF obligations

under this Order may, for good cause shown, be subject to sanctions, to be determined by the court, upon motion of the defendants." PTO # 17 ¶ 1i [ECF No. 281], No. 2:12-md-2327 (S.D. W. Va. Oct. 4, 2012).

Additionally, as ordered by PTO # 195, the plaintiffs were to complete and serve a PFS to the defendants by October 19, 2015. PTO # 195 [ECF No. 22]. "Any plaintiff who fails to comply with the PFS obligations under this Order may, for good cause shown, be subject to sanctions, to be determined by the court, upon motion of the defendants." PTO # 17 ¶ 1i [ECF No. 281], No. 2:12-md-2327 (S.D. W. Va. Oct. 4, 2012).

Accordingly, pursuant to PTO # 17, the defendants seek remedy from the court in the form of dismissal with prejudice for the plaintiffs' failure to comply with the applicable PTOs. Mot. to Dismiss [ECF No. 24]. The plaintiffs did not respond to this motion to dismiss. Applying the *Wilson* factors to these facts and bearing in mind the unique context of multidistrict litigation, I conclude that recourse is justified under Rule 37, and the plaintiffs' case should be dismissed with prejudice.

The first factor, bad faith, is difficult to ascertain, given that plaintiffs' counsel has been unresponsive to the defendants several attempts to resolve the plaintiffs' discovery failures. The defendants believe that the discovery issues may be related to the death of Ms. Atemnkeng in 2013. *Id*. at n. 1.    However, counsel's inability to contact the plaintiffs is not an excuse. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 634 n.10 (1962) ("[A] civil plaintiff may be deprived of his claim if he failed to see to it that his lawyer acted with dispatch in the prosecution of his lawsuit."). Furthermore, as set forth in PTO # 4, "[a]ll attorneys representing parties to this litigation . . . bear the responsibility to represent their individual client or clients." PTO # 4 ¶ C, *In re: Ethicon Pelvic Repair System Prods. Liab. Litig.*, No. 2:12-md-002327 (S.D. W. Va. Apr. 17, 2012), *available at*

http://www.wvsd.uscourts.gov/MDL/ethicon/ orders.html. This includes awareness of and good faith attempts at compliance with all PTOs and other court orders. PTO # 17—*which was jointly drafted by the leadership counsel of both parties*—expressly states that failure to timely submit a PPF could result in sanctions. The plaintiffs nevertheless failed to comply. Although these failures do not appear to be callous, the fact that they were blatant and in full knowledge of the court's orders and discovery deadlines leads me to weigh the first factor against the plaintiff. *See In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 867 (8th Cir. 2007) ("While not contumacious, perhaps, this is a blatant disregard for the deadlines and procedure imposed by the court, [and t]herefore, we conclude that the [plaintiffs] did not act in good faith.").

The second factor—prejudice caused by noncompliance—also leans toward the order of sanctions. Without a substantially complete PPF or PFS, Ethicon is "unable to mount its defense because it [has] no information about the plaintiff or the plaintiff's injuries outside the allegations of the complaint." *In re Phenylpropanolamine*, 460 F.3d at 1234. Furthermore, because Ethicon has had to divert its attention away from timely plaintiffs and onto Ms. Atemnkeng, the delay has unfairly impacted the progress of the remaining plaintiffs in MDL 2327.

The adverse effect on the management of the MDL as a whole segues to the third factor, the need to deter this sort of noncompliance. When parties fail to comply with deadlines provided in pretrial orders, a domino effect develops, resulting in the disruption of other MDL cases. From the representations of Ethicon's counsel, more than 800 plaintiffs have failed to supply Ethicon with a timely PPF. Consequently, the court expects to have to evaluate and dispose of 800 motions similar to the one at bar, thereby directing its time and resources to noncompliant plaintiffs at the expense of other plaintiffs in this MDL. This cumbersome pattern goes against the purpose of MDL procedure, and I must deter any behavior that would allow it to continue. *See* H.R. Rep. No.

90-1130, at 1 (1967), *reprinted in* 1968 U.S.C.C.A.N. 1898, 1901 (stating that the purpose of establishing MDLs is to "assure the uniform and expeditious treatment" of the included cases).

The fourth *Wilson* factor also points in favor of dismissing this action. As the Supreme Court has observed, "the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976). This is particularly true in a large MDL such as this one. As other courts have observed,

> [A]dministering cases in multidistrict litigation is different from administering cases on a routine docket . . . . Congress established MDL protocols to encourage efficiency. In order to do so, MDL courts must be able to establish schedules with firm cutoff dates if the coordinated cases are to move in a diligent fashion toward resolution by motion, settlement, or trial. MDL courts must be given greater discretion to organize, coordinate and adjudicate its proceedings, including the dismissal of cases for failure to comply with its orders.

*In re Guidant Corp. Implantable Defibrillators Products Liab. Litig.*, 496 F.3d 863, 867 (8th Cir. 2007) (quoting in part *In re Phenylpropanolamine Prod. Liab. Litig.*, 460 F.3d at 1229, 1232 (internal references omitted). This course of action is consistent with PTO # 17, which warned plaintiffs of the possibility of dismissal upon failure to submit a timely PPF. *See* PTO # 17 ¶ 1g [ECF No. 281] ("If a plaintiff does not submit a PPF within the time specified in this Order, defendants may move immediately to dismiss that plaintiff's case without first resorting to [] deficiency cure procedures.").

Alternative lesser sanctions, such as the ones proposed in Rule 37(b)(2)(i–iv), are simply impracticable, and therefore ineffective, in the context of an MDL containing over 29,000 cases. The court cannot spare its already limited resources enforcing and monitoring sanctions that are

qualified by the individual circumstances of each case, nor would it be fair for the court to place this responsibility on Ethicon. Therefore, considering the administrative and economic realities of multidistrict litigation, I conclude that dismissing the plaintiffs' claims with prejudice is a "just order" under Rule 37 and in line with the Federal Rules of Civil Procedure as a whole.

## IV.   Conclusion

It is **ORDERED** that Ethicon's Motion to Dismiss with prejudice [ECF No. 24] is **GRANTED**.  It is further **ORDERED** that plaintiffs' counsel send a copy of this order, via certified mail, return receipt requested, and file a copy of the receipt.

The court **DIRECTS** the Clerk to remove the Wave 1 flag from this case and send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        February 11, 2016

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE